# United States Court of Appeals for the Federal Circuit

---

**DECKERS OUTDOOR CORPORATION,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2012-1411

---

Appeal from the United States Court of International Trade in No. 10-CV-0380, Judge Gregory W. Carman.

---

Decided: May 8, 2013

---

PATRICK D. GILL, Rode & Qualey, of New York, New York, argued for plaintiff-appellant. With him on the brief were WILLIAM J. MALONEY and ELEANORE KELLY-KOBAYASHI.

BEVERLY A. FARRELL, Trial Attorney, Civil Division, Commercial Litigation Branch, of New York, New York, argued for defendant-appellee. On the brief were STUART F. DELERY, Acting Assistant Attorney General, and JEANNE E. DAVIDSON, Director, of Washington, DC; BARBARA S. WILLIAMS, Attorney in Charge, and MARCELLA POWELL, of New York, New York. Of counsel on the brief

was YALENA SLEPAK, Trial Attorney, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

———————————

Before DYK, MAYER, and REYNA, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* MAYER.

Dissenting opinion filed by *Circuit Judge* DYK.

MAYER, *Circuit Judge*.

Deckers Outdoor Corporation ("Deckers") appeals a final judgment of the United States Court of International Trade ("Trade Court") that held that pull-on boots were properly classified under subheading 6404.19.35 ("Subheading 19.35") of the Harmonized Tariff Schedule of the United States ("HTSUS"). *See Deckers Outdoor Corp. v. United States*, 844 F. Supp. 2d 1324 (Ct. Int'l Trade 2012) ("*Trade Court Decision*"). Because we conclude that the merchandise at issue was correctly classified as "footwear of the slip-on type" under Subheading 19.35, we affirm.

## I. BACKGROUND

Deckers imported UGG® Classic Crochet boots into the United States in 2006 and 2007. These boots have a knit upper portion and a rubber sole. They do not have laces, buckles, or other fasteners. The parties agree that the merchandise in question "is sold as boots, that the boots can be pulled on with the hands, and that the boots extend above the ankle[.]" *Trade Court Decision*, 844 F. Supp. 2d at 1327 (citations and internal quotation marks omitted).

At liquidation, United States Customs and Border Protection ("Customs") classified the Classic Crochet boots under Subheading 19.35, which covers:

Footwear with outer soles of rubber, plastics, leather or composition leather and uppers of tex-

tile materials: Footwear with outer soles of rubber or plastics: Other: Footwear with open toes or open heels; *footwear of the slip-on type, that is held to the foot without the use of laces or buckles or other fasteners*, the foregoing except footwear of subheading 6404.19.20 and except footwear having a foxing or foxing-like band wholly or almost wholly of rubber or plastics applied or molded at the sole and overlapping the upper[.]

Subheading 19.35 (emphasis added).

Deckers filed a protest challenging the classification of the merchandise, arguing that it should be reclassified under HTSUS subheading 6404.19.90 ("Subheading 19.90"), a basket provision which covers "[f]ootwear with outer soles of rubber . . . and uppers of textile materials" that is "[v]alued [at] over $12/pair." Merchandise classified under Subheading 19.35 was subject to a duty rate of 37.5% *ad valorem*, whereas merchandise classified under Subheading 19.90 was subject to a duty rate of 9% *ad valorem*. *See Trade Court Decision*, 844 F. Supp. 2d at 1326.

After Customs denied its protest, Deckers filed suit at the Trade Court. Deckers argued that the term "footwear of the slip-on type" as used in Subheading 19.35 only encompasses footwear that does not extend above the ankle. *Id.* at 1328. In support, Deckers cited to dictionary definitions of the term "slip-on" in which the only type of footwear specifically mentioned was a "shoe." *See id.* at 1332. Deckers also pointed to language from a Senate Finance Committee Report on the Multilateral Trade Negotiations of 1979, which stated that "[t]he final U.S. position provides separate categories for boots and slip-on footwear . . . ." S. Comm. on Fin., Agreements Being Negotiated at the Multilateral Trade Negotiations in Geneva—U.S. Int'l Trade Comm'n Investigation No. 332-

101, 96th Cong. 126 (Comm. Print 1979) ("*Trade Negotiations Report*").

The Trade Court rejected Deckers' arguments and granted the government's motion for summary judgment. The court noted that *Footwear Definitions*, Treas. Dec. 93-88, 27 Cust. B. & Dec. No. 46, 1993 CUSBUL LEXIS 108, at *24 (Oct. 25, 1993) ("*Treasury Decision 93-88*"), a Customs publication designed to assist importers in understanding classification requirements, specifically provides that the term "slip-on" includes "[a] boot which must be pulled on." The court determined, after reviewing several dictionary definitions of the term "slip-on," that "the absence of fasteners is determinative . . . in whether an item is or is not a slip-on." *Trade Court Decision*, 844 F. Supp. 2d at 1332. The court concluded, moreover, that the clause "without the use of laces or buckles or other fasteners" that follows the phrase "footwear of the slip-on type" in Subheading 19.35 "serves to explain and elaborate upon" the meaning of the term "slip-on." *Id.* at 1331 (internal quotation marks omitted). Because the Classic Crochet boots have no laces, buckles, or other functional fasteners, the Trade Court concluded that they were properly classified under Subheading 19.35. *Id.* at 1332-33.

Deckers then filed a timely appeal with this court. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## II. Discussion

### A. Standard of Review

We review de novo the Trade Court's grant of summary judgment on tariff classifications. *LeMans Corp. v. United States*, 660 F.3d 1311, 1315 (Fed. Cir. 2011); *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006). A classification decision requires two underlying steps: (1) determining the proper meaning of the tariff provisions, which is a question of law; and (2) determining

the correct heading under which the disputed goods fall, which is a question of fact. *Outer Circle Prods. v. United States*, 590 F.3d 1323, 1325 (Fed. Cir. 2010). In reviewing tariff classifications, we accord deference to a Customs' classification ruling in proportion to its "power to persuade" under the principles articulated in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *See United States v. Mead Corp.*, 533 U.S. 218, 221 (2001) (explaining that a Customs' tariff classification "ruling is eligible to claim respect according to its persuasiveness").

## B. THE HTSUS

The HTSUS is organized by headings and each of these headings has one or more subheadings. *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998). The headings contain "general categories of merchandise," whereas "the subheadings provide a more particularized segregation of the goods within each category." *Id.* The tariff classification of merchandise under the HTSUS is governed by the principles set forth in the General Rules of Interpretation ("GRIs"). *See LeMans*, 660 F.3d at 1316. These GRIs must be applied in numerical order. *Arko Foods Int'l, Inc. v. United States*, 654 F.3d 1361, 1364 (Fed. Cir. 2011).

On appeal, Deckers asserts that Customs erred in classifying the Classic Crochet boots as "footwear of the slip-on type" under Subheading 19.35. In support, it advances two principal arguments. First, it contends that the term "footwear of the slip-on type" as used in Subheading 19.35 only applies to shoes and does not encompass boots. In Deckers' view, "[f]ootwear of the slip-on type is a category of footwear, specifically a sub-category of shoes, but not a sub-category of boots." Second, Deckers asserts that because the Classic Crochet boots must be "pulled on" with the hands, they do not qualify as "slip-on" footwear.

We find neither of these arguments persuasive. The statutory language, the definition of "slip-on" contained in *Treasury Decision 93-88*, and the common and commercial understanding of the term "slip-on," all support the Trade Court's determination that the Classic Crochet boots fall squarely within the scope of Subheading 19.35.

## C. THE STATUTORY LANGUAGE

"[W]here Congress has clearly stated its intent in the language of a statute, a court should not inquire further into the meaning of the statute." *Pillowtex Corp. v. United States*, 171 F.3d 1370, 1373 (Fed. Cir. 1999); *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). GRI 1 thus recognizes that the first step in determining whether goods have been properly classified is to examine the language of the relevant HTSUS headings and subheadings. *See Arko Foods*, 654 F.3d at 1364.

Deckers' argument that boots are excluded from the scope of Subheading 19.35 is contravened by the plain language of the statute. Subheading 19.35 is not limited to shoes, but instead covers "*footwear* of the slip-on type." Subheading 19.35 (emphasis added). As Deckers acknowledges, the term "footwear" plainly encompasses both shoes and boots.[1] *See* Br. of Appellant 8 (acknowl-

---

[1] The explanatory notes to Chapter 64 make clear that the term "footwear" includes boots. *See* Ch. 64 Gen. Explanatory Note (A) (stating that "[f]ootwear may range from sandals . . . to thigh-boots"). Although HTSUS explanatory notes are not legally binding, they are instructive on the meaning of a particular tariff provision. *See Lynteq, Inc. v. United States*, 976 F.2d 693, 699 (Fed. Cir. 1992).

edging that the Classic Crochet boots are "footwear with outer soles of rubber or plastic"). Certain HTSUS provisions refer specifically to shoes. *See* HTSUS 6404.11 (referring to "tennis shoes," "basketball shoes," and "gym shoes"); *id.* 6403.19.30 (referring to "golf shoes"). Other HTSUS provisions refer specifically to boots. *See id.* 6402.12.00 (referring to "[s]ki-boots" and "snowboard boots"). In drafting Subheading 19.35, however, Congress did not use the term "shoe" or "boot," but instead employed the broader term "footwear." If Congress had intended that Subheading 19.35 apply only to shoes, rather than to various types of footwear, it could readily have inserted the word "shoe" into the statute. *See Russello v. United States*, 464 U.S. 16, 23 (1983) (When "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citations and internal quotation marks omitted)). In arguing that Subheading 19.35 excludes boots, Deckers excises the word "footwear" from the statutory text. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("In construing a statute we are obliged to give effect, if possible, to every word Congress used."); *United States v. Menasche*, 348 U.S. 528, 538-39 (1955) ("The cardinal principle of statutory construction is to save and not to destroy," and a court is obligated "to give effect, if possible, to every clause and word of a statute." (citations and internal quotation marks omitted)).

Deckers' position is further undermined by *Treasury Decision 93-88*, which specifically provides that the term "slip-on" includes a pull-on boot:

A "slip-on" includes:

1. *A boot which must be pulled on.*

2. Footwear with elastic gores which must be stretched to get it on or with elastic sewn into the top edge of the fabric of the upper.

3. Footwear with a shoe lace around the top of the upper which is clearly not functional, i.e., the lace will not be tied and untied when putting it on or taking it off.

It does not include any boot or shoe with any laces, buckles, straps, snaps, or other closure, which are probably closed, i.e., tied, buckled, snapped, etc., after the wearer puts it on.

*Treasury Decision 93-88*, 1993 CUSBUL LEXIS, at *24-25 (emphasis added).

While the definitions contained in *Treasury Decision 93-88* "are not to be construed as Customs rulings," they have been used by Customs since at least 1993 and are specifically designed to assist importers "in better understanding classification requirements." *Id.* at *1. The Trade Court has previously determined that the footwear definitions contained in *Treasury Decision 93-88* are "persuasive when read together with the tariff provision." *Carrini, Inc. v. United States*, 25 Ct. Int'l Trade 857, 863 (2001). Significantly, Customs has repeatedly classified boots without laces or other fasteners as "footwear of the slip-on type" under Subheading 19.35. *See* U.S. Customs Serv., NY L85617 (June 27, 2005) (concluding that a "women's slip-on fashion boot" was properly classified under Subheading 19.35); U.S. Customs Serv., NY K88830 (Sept. 17, 2004) (concluding that a "women's slip-on boot" with "a predominately stretch knit textile material upper" was properly classified under Subheading 19.35); U.S. Customs Serv., NY C88564 (June 15, 1998) (concluding that a "women's black, over the ankle height pull-on, elasticized textile upper dress boot" was properly classified under Subheading 19.35); U.S. Customs Serv., NY D81445 (Aug. 28, 1998) (concluding that a "woman's

pull-on fashion boot" was properly classified under Subheading 19.35). The consistency of Customs' interpretation of the term "slip-on" serves to enhance the persuasive power of that interpretation. *See Dell Prods. LP v. United States*, 642 F.3d 1055, 1060 (Fed. Cir. 2011); *see also Warner-Lambert Co. v. United States*, 407 F.3d 1207, 1209 (Fed. Cir. 2005) (explaining that the degree of deference afforded a Customs' classification depends on the "consistency of the classification with earlier and later pronouncements").

Deckers does not dispute that the definition of "slip-on" contained in *Treasury Decision 93-88* expressly includes "[a] boot which must be pulled on." It argues, however, that the Trade Court erred in relying on this definition because the footwear "industry does not consider any type of boot, especially one that has to be pulled on, to be of the slip-on type." We disagree. As the Trade Court correctly determined, the term "slip-on" can be used to refer to both shoes and boots. *See Trade Court Decision*, 844 F. Supp. 2d at 1332-33 ("[I]t is clear that the term 'slip-on' is commonly used to refer to both shoes and boots. . . . [Deckers'] narrow reading of the term 'slip-on' is unjustifiably cramped."). When it was before the trial court, the government provided several examples from commercial websites demonstrating that footwear retailers commonly refer to boots as "slip-ons." The government noted that the Shopzilla website advertises an UGG® "slip-on" boot. The Orvis website specifically states that "UGG® Slip-On Sheepskin Boots" are "Ugg's best-selling winter boots," and the Zappos website states that the UGG® Newbreak boot has "an easy slip-on silhouette." Similarly, the Robert Frost Fine Footwear website describes the "Ugg Australia Ayer Slip-on Boot" as "[a] classic pull-on boot" that can be taken "on and off with ease." Perhaps most significantly, the government produced evidence showing that a search for the term "slip-on" on the UGG® Australia official website "re-

turn[ed] results including over-the-ankle footwear such as the Men's Brockman, Men's Leighton, Women's Sundance II, and Women's Classic Mini." *Trade Court Decision*, 844 F. Supp. 2d at 1329 (footnote omitted). Given that several online retailers describe boots as "slip-on" footwear, we reject Deckers' assertion that the footwear industry does not consider any type of boot to be "of the slip-on type." *See LeMans*, 660 F.3d at 1316 ("[W]e construe the terms used in the headings and subheadings according to their common and popular meaning, which may be drawn from our own understanding, dictionaries and other reliable sources." (citations and internal quotation marks omitted)); *Rollerblade, Inc. v. United States*, 282 F.3d 1349, 1352 (Fed. Cir. 2002) ("When the HTSUS does not define a tariff term, the term receives its common and popular meaning." (citations and internal quotation marks omitted)).

In support of its claim that the term "slip-on" only covers shoes and excludes boots, Deckers relies heavily on the definition of "slip-on" contained in The Complete Footwear Dictionary 167 (2d ed. 2000). That lexicon provides that a "slip-on" is "[a] plain but dressy pump without lacings or other fastenings, worn by either men or women. Any shoe without fastenings." When it was before the Trade Court, however, the government cited to other dictionary definitions that define "slip-on" more broadly. These definitions make clear that while the term "slip-on" certainly includes shoes, it also encompasses various other items, such as gloves, pull-on garments, and girdles. *See Trade Court Decision*, 844 F. Supp. 2d at 1332 (noting that the items described as "slip-ons" in various dictionaries include "a garment [that can] be slipped on or off over the head," a "pullover," "a glove or shoe without fastenings," and "a garment ([such] as a girdle) that one steps into and pulls up" (citations and internal quotation marks omitted)). Because there are competing dictionary definitions of the term "slip-on"—

and many of those definitions are not limited to shoes—the Trade Court correctly declined to limit the term "footwear of the slip-on type" to shoes. *See Intercontinental Marble Corp. v. United States*, 381 F.3d 1169, 1173 (Fed. Cir. 2004) (refusing to limit the term "marble" to its "geological definition" where dictionary definitions stated that marble had a geological definition, but also indicated that the term had "a broader non-geological meaning").

## D. SLIP-ON FOOTWEAR

Deckers further contends that the Classic Crochet boots do not qualify as "footwear of the slip-on type'" under Subheading 19.35 because they cannot be "slipped on," but instead "must be pulled on with both hands." We do not find this reasoning persuasive. As discussed previously, dictionary definitions make clear that the term "slip-on" can include items such as gloves, pullover garments, and girdles. *See Trade Court Decision*, 844 F. Supp. 2d at 1332. Indisputably, a girdle is not an item that can be put on without use of the hands. Likewise, gloves and pullover garments are normally donned using the hands. Given that several dictionary definitions of the term "slip-on" describe items that must be pulled on with the hands, we reject Deckers' assertion that pull-on footwear is excluded from the scope of Subheading 19.35.[2]

---

[2] Deckers cites to a Senate Finance Committee Report on the Multilateral Trade Negotiations of 1979 which states that "[t]he final U.S. position provides separate categories for boots and slip-on footwear at a duty rate of 37.5 percent ad valorem." *Trade Negotiations Report* at 126. Without more, however, this statement cannot override the plain language of Subheading 19.35, which is not limited to "shoes of the slip-on type," but instead applies to the broader category of "footwear of the slip-on type." As we have previously made clear, "clear evidence of legislative intent [is] required to overcome the presumption that the terms in the tariff schedules carry their

*See Trade Court Decision*, 844 F. Supp. 2d at 1333 ("It would be contrary to common sense and meaning to limit the term 'slip-on' to footwear able to be put on or taken off without using the hands, but to apply the term 'slip-on' to other garments requiring use of the hands.").

As noted previously, Subheading 19.35 covers "footwear of the slip-on type, that is held to the foot without the use of laces or buckles or other fasteners." In the Trade Court's view, the relative clause that follows the phrase "footwear of the slip-on type" is designed "to explain and elaborate upon" what is meant by the term "slip-on type." *Trade Court Decision*, 844 F. Supp. 2d at 1331. The court explained that "[t]he words 'that is' which introduce the relative clause are directly equivalent to the phrase *id est*, commonly abbreviated as 'i.e.,' and may be rephrased as 'in other words' with no change in meaning." *Id.* at 1332. Thus, according to the Trade Court, "footwear of the slip-on type" can be defined as footwear that does not have laces, buckles, or other functional fasteners. *Id.*

Deckers argues that this interpretation of Subheading 19.35 "strains logic and grammar." In Deckers' view, if the relative clause "held to the foot without the use of laces or buckles or other fasteners," were designed to explain what was meant by the term "footwear of the slip-on type," Congress would have inserted an additional comma following the phrase "that is." We agree with

---

commercial meanings." *Intercontinental Marble*, 381 F.3d at 1175 (citations and internal quotation marks omitted). We note, moreover, that the focus of the committee report relied upon by Deckers was on the fact that imports of "rubber footwear" had increased dramatically between 1973 and 1978, and the report did not specifically address the question of whether pull-on boots constitute a type of slip-on footwear. *See Trade Negotiations Report* at 126.

Deckers that the meaning of Subheading 19.35 would have been more pellucid had Congress added an additional comma after the phrase "that is." We note, however, that defining the term "slip-on footwear" as footwear that does not contain "laces or buckles or other fasteners" is consistent with dictionary definitions which indicate that the lack of fasteners is a characteristic feature of slip-on items.[3] *See* New Oxford Am. Dictionary 1597 (2d ed. 2005) (stating that the adjective "slip-on" is used especially to refer to "shoes or clothes" that have "no (or few) fasteners and [are] therefore able to be put on and taken off quickly"); Webster's Third New Int'l Dictionary 2144 (Unabridged ed. 1993) (defining "slip-on" as "an article of clothing that is easily slipped on or off," such as "a glove or shoe without fastenings"); The Complete Footwear Dictionary at 167 (stating that a "slip-on" is "[a] plain but dressy pump without lacings or other fastenings"); Webster's New World Dictionary of the Am. Language 1340 (2d coll. ed. 1974) (stating that "slip-on" means "easily put on or taken off, as shoes without laces or a garment to be slipped on or off over the head").

---

[3] The dissent suggests that "[i]f Congress had meant this subheading to cover all such footwear, it could simply have written 'footwear that is held to the foot without the use of laces or buckles or other fasteners.'" *Post* at 1. But in enacting the HTSUS, Congress recognized that the HTSUS represents the collective administrative contributions of various U.S. Departments and agencies, and that it reflects trade interests of parties in the United States and throughout the world. Congress enabled the Secretary of the Treasury to implement and interpret the HTSUS, *see, e.g.,* 19 U.S.C. § 1625, and it is Customs' interpretation that we address in this case.

Furthermore, Deckers' proffered interpretation of the term "slip-on footwear" would render other language in Subheading 19.35 superfluous. Subheading 19.35 specifically includes "[f]ootwear with . . . open heels." Items of footwear that have open heels are, quite obviously, generally easy to step into without using the hands. Indeed, the UGG® Australia official website depicts several types of slippers, clogs, and "scuffs," which have open heels and which could therefore be readily put on without use of the hands. *See* J.A. 165-78. If we were to accept Deckers' argument that "slip-on" footwear is footwear that can be stepped into without using the hands, then the language in Subheading 19.35 referring to "footwear with . . . open heels" would be rendered superfluous because such footwear would already be included within the definition of "footwear of the slip-on type." When interpreting HTSUS provisions, we must strive to give effect to every word in the statutory text. *See Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1178 (2013) (explaining that "the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme"); *Corley v. United States*, 556 U.S. 303, 314 (2009) (emphasizing that a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant" (citations and internal quotation marks omitted)).

## E. SUMMARY JUDGMENT

In a classification dispute, the grant of summary judgment is appropriate where there is no genuine dispute as to the nature of the merchandise and the classification determination turns on the proper meaning and scope of the relevant tariff provisions. *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1366 (Fed. Cir. 1998); *see also Cummins*, 454 F.3d at 1363 (emphasizing that "when the nature of the merchandise is undisputed . . . the classification issue collapses entirely into a question of law"). Here, there were no genuine issues of

material fact regarding the salient physical characteristics of the Classic Crochet boots. To the contrary, the government had conceded that the boots had to be pulled on with the hands. Thus, resolution of the parties' dispute centered on the meaning of the term "footwear of the slip-on type," a question of statutory interpretation. *See Bausch & Lomb*, 148 F.3d at 1365 ("[S]ummary judgment is appropriate when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is.").

The Trade Court may examine many resources to ascertain the common meaning or commercial understanding of a particular tariff term. *See Rocknel Fastener, Inc. v. United States*, 267 F.3d 1354, 1356-57 (Fed. Cir. 2001) ("To ascertain the common meaning of a term, a court may consult dictionaries, scientific authorities . . . and lexicographic and other materials." (citations and internal quotation marks omitted)). Here, Deckers had ample opportunity to submit evidence regarding the common understanding of the term "footwear of the slip-on type" when it submitted its opposition to the government's motion for summary judgment. Deckers provided the trial court with various dictionary definitions of the term "slip-on" and also submitted the deposition testimony of Peter Young, a Deckers employee. Young stated that a person would be unable to "slide" his or her foot into the Classic Crochet boot, but would instead have to "pull" the boot on. J.A. 96-97. Such testimony, however, was insufficient to create any genuine issues of material fact given that the government had conceded that the Classic Crochet boots were pulled on with the hands.[4] *See Trade Court Decision*, 844 F. Supp. 2d at 1327.

-------------------

[4]    Young also stated that he did not believe that a pull-on boot could qualify as a "slip-on" because the terms "pull-on" and "slip-on" are "contradictory." J.A. 103. The Trade Court had the opportunity to fully consider Young's

Deckers asserts that if the case had proceeded to trial it would have produced testimony from industry witnesses who would have opined that the footwear "industry does not consider any type of boot, especially one that has to be pulled on, to be of the slip-on type." Deckers fails, however, to identify any of these purported industry witnesses. Nor did Deckers offer any affidavits or declarations from such witnesses when it was before the Trade Court. Under such circumstances, Deckers' unsupported assertion that unnamed industry witnesses would have testified that the footwear industry does not consider a boot to be a "slip-on" is too speculative to raise any genuine issue of material fact. *See Davis v. Brouse McDowell, L.P.A.*, 596 F.3d 1355, 1364 (Fed. Cir. 2010) (explaining that "[a]n unsupported opinion . . . cannot and does not

---

deposition testimony before granting the government's motion for summary judgment. *See Trade Court Decision*, 844 F. Supp. 2d at 1333. The court determined, however, that the dictionary definitions provided by the government and *Treasury Decision 93-88* provided a more persuasive interpretation of the term "slip-on footwear" in Subheading 19.35.

The Trade Court also had the opportunity to consider the deposition testimony of Stacey Kalkines, an import specialist employed by Customs. Kalkines acknowledged that no one from Customs had tried on a sample of the Classic Crochet boot before classifying the boots under Subheading 19.35. J.A. 116-17. Kalkines explained, however, that Customs determines whether boots qualify as "footwear of the slip-on type" by ascertaining whether the boots have fasteners. *Id.* Customs could determine whether a particular boot had fasteners "by a visual examination without trying to put the boot on." *Id.* at 116.

create a genuine issue of material fact"); *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008) (emphasizing that "[c]onclusory expert assertions cannot raise triable issues of material fact on summary judgment"); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.").

## III. CONCLUSION

Accordingly, the judgment of the United States Court of International Trade is affirmed.

## **AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

_____

**DECKERS OUTDOOR CORPORATION,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

_____

2012-1411

_____

Appeal from the United States Court of International Trade in No. 10-CV-0380, Judge Gregory W. Carman.

_____

DYK, *Circuit Judge*, dissenting.

This appeal requires us to determine whether the phrase "footwear of the slip-on type, that is held to the foot without the use of laces or buckles or other fasteners," in subheading 6404.19.35 of the Harmonized Tariff Schedule of the United States ("HTSUS"), covers boots that rise above the ankle and that must be pulled on using the hands. The majority interprets the subheading as covering *any* footwear "that is held to the foot without the use of laces or buckles or other fasteners." I respectfully disagree. If Congress had meant for this subheading to cover all such footwear, it could simply have written "footwear that is held to the foot without the use of laces or buckles or other fasteners," and omitted the words "of the slip-on type." It did not do so, suggesting that the subheading is more limited, and in particular that the

words "of the slip-on type" are limiting.[1]

In interpreting tariff provisions, we look to the common and commercial meaning of the terms involved. "[T]ariff acts are generally to be construed according to the commercial understanding of the terms employed," *Swan v. Arthur*, 103 U.S. 597, 598 (1881), so that "[a]bsent legislative intent to the contrary, we construe HTSUS terms according to their common and commercial meanings, which are presumed to be the same," *Franklin v. United States*, 289 F.3d 753, 757 (Fed. Cir. 2002). The term "footwear of the slip-on type" has a common and commercial meaning that excludes boots of the type involved here. In order to qualify as "footwear of the slip-on type," under the common and commercial definition, an item of footwear must satisfy three limitations: it must be a *shoe* (that is, not a high-cut boot); it must be *easy to slip on*; and it must have *few or no fasteners*.

Both specialized and general-purpose dictionaries support this definition of "footwear of the slip-on type." Two industry references define a "slip-on" as, respectively, "[a]ny *shoe without fastenings*," and "[a]ny *shoe* into which the wearer *merely slips the foot*, held *without benefit of lacing, buckles[,] or other fastening*." *See The Complete Footwear Dictionary* 167 (William A. Rossi ed., 2d ed. 2000) (emphasis added); *The Dictionary of Shoe Industry Terminology* (Ruth J. Schachter ed., 1986) (emphasis added). One general-purpose dictionary defines "slip-on"

---

[1]  "[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (quotation marks omitted); *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

as an adjective meaning "*easily put on or taken off*, as *shoes without laces*," or as a noun describing "a slip-on *shoe* or garment." *Webster's New World Dictionary of the American Language* 1340 (2d. college ed. 1984) (emphasis added). Another general-purpose dictionary defines "slip-on" as an adjective applied "esp[ecially to] *shoes* or clothes," and meaning "having *no (or few) fasteners* and therefore *able to be put on and taken off quickly*"; the same dictionary also defines "slip-on" as a noun describing "a *shoe* or garment that can *be easily slipped on and off*." *The New Oxford American Dictionary* 1597 (2d ed. 2005) (emphasis added). A third general-purpose dictionary defines "slip-on" either as "a glove or *shoe without fastenings*," or simply as "an article of clothing that is *easily slipped on or off*." *Webster's Third New International Dictionary of the English Language Unabridged* 2144 (2002) (emphasis added).

Furthermore, the term "shoe," in its common and commercial definition, excludes high-cut boots. One specialized dictionary defines "shoe" as including "chiefly *low-cut footwear versus high-tops or boots*," while two general-purpose dictionaries define "shoe" as, respectively, a "covering for the foot . . . *not reaching above the ankle*," and a "durable covering for the human foot, *esp[ecially] one . . . reaching about to the ankle*." *The Complete Footwear Dictionary*, *supra*, at 155 (emphasis added); *The New Oxford American Dictionary*, *supra*, at 1566 (emphasis added); *The American Heritage Dictionary* 1132 (2d college ed. 1982). A third general-purpose dictionary defines "shoe" more broadly, as "an outer covering for the human foot usu[ally] made of leather," but two of its exemplary sub-definitions are limited to low-cut footwear ("an outer foot covering *reaching to the ankle or thereabouts*," and "a *low-cut* outer foot covering—*compare boot, oxford*"). *Webster's Third New International Dictionary*, *supra*, at 2099 (emphasis added).

The government does not contest that these dictionary

definitions set forth the term's common and commercial meaning. Rather, the government emphasizes the fact that several of the "shoe" definitions acknowledge that the term sometimes designates an above-the-ankle boot. It is apparent from the definitions in the record, however, that this usage of "shoe" is uncommon or disfavored.

Having adopted this common and commercial definition of "footwear of the slip-on type," it is clear that the boots at issue in this appeal do not fall within subheading 6404.19.35. The government has conceded that the boots are, indeed, "boots"; that they rise above the ankle; and that "[t]o don the boots, a wearer must grip the top of the woven textile upper with two hands . . . and *pull the boot up forcefully* while adjusting the foot until the foot and calf are securely ensconced." *See Deckers Outdoor Corp. v. United States*, No. 08-00410, slip op. at 2, 5-6 (Ct. Int'l Trade Apr. 24, 2012) (emphasis added); United States Br. 2-3. The boots therefore fail two of the three criteria for being "footwear of the slip-on type": they are not shoes, and they are not easy to slip on.

This interpretation of the statutory language does not violate the rule against surplusage because it renders the phrase "that is held to the foot without the use of laces or buckles or other fasteners" surplus. In fact, these words are not surplus, but rather serve to exclude shoes that are easily slipped on but that have "few," as opposed to "no," fasteners. *See The New Oxford American Dictionary*, *supra*, at 1597 (defining "slip-on" as "having no (*or few*) fasteners and therefore able to be put on and taken off quickly" (emphasis added)). Nor, contrary to the majority, does this reading of the statutory term "footwear of the slip-on type, that is held to the foot without the use of laces or buckles or other fasteners" render surplus the separate clause of the same subheading that covers "[f]ootwear with open toes or open heels." While *some* open-heel footwear may fall within the statutory term at issue, other such footwear may have straps or other

fasteners holding the foot in place. Indeed, the government's own set of "Footwear Definitions," which both the government and the majority cite as authoritative in this case, defines "open heeled shoes" as including any shoes in which "all or part of the back of the wearer's heel can be seen"—a definition that clearly allows for shoes with a rear strap or fastener. See *Footwear Definitions*, T.D. 93-88, 27 Cust. B. & Dec. No. 46, at *15 (Oct. 25, 1993).

Finally, the majority urges that we should defer to the definition of "slip-on" found in the government's collection of "Footwear Definitions." According to this document, "[a] 'slip-on' includes . . . [a] boot which must be pulled on." *See id.* at *24. Presumably, this definition would include cowboy boots, which can be exceptionally difficult to place on the foot. As the majority concedes, however, the definitions included in this document are not formal "Customs rulings." *See id.* at *1. As such, these definitions are entitled only to *Skidmore* deference, notwithstanding the length of time to which the agency has adhered to them. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. __, __, 131 S. Ct. 1325, 1335-36 (2011) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) and *United States v. Mead Corp.*, 533 U.S. 218 (2001)); *see also Dell Prods. LP v. United States*, 642 F.3d 1055, 1060 (Fed. Cir. 2011) (citing *Mead*). Under *Skidmore* deference, such agency pronouncements are "eligible to claim respect according to [their] persuasiveness." *See Mead*, 533 U.S. at 221; *see also Skidmore*, 323 U.S. at 140 ("The weight [given to an agency's non-definitive pronouncement] will depend upon the thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."). The document does not provide any reasoning for its definitions, but simply asserts by fiat that "boot[s] which must be pulled on" are "slip-on[s]." *See Footwear Definitions*, T.D. 93-88, 27 Cust. B. & Dec. No.

46, at *24. For the reasons discussed above, the government's interpretation of subheading 6404.19.35 is unpersuasive.

In sum, the common and commercial meaning of the term "footwear of the slip-on type, that is held to the foot without the use of laces or buckles or other fasteners" excludes boots that rise above the ankle and that are not easy to slip on, such as the boots at issue in this appeal. I respectfully dissent.