# United States Court of Appeals for the Federal Circuit

---

**DEPENDABLE PACKAGING SOLUTIONS, INC.,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee.*

---

2013-1300

---

Appeal from the United States Court of International Trade in No. 10-CV-0330, Judge Richard K. Eaton.

---

Decided: July 9, 2014

---

PETER S. HERRICK, Peter S. Herrick, P.A., of Miami, Florida, argued for plaintiff-appellant.

EDWARD F. KENNY, Trial Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellee. With him on the brief were STUART F. DELERY, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and AMY M. RUBIN, Acting Assistant Director, International Trade Field Office. Of counsel on the brief was SHERYL A. FRENCH, Office of Assistant Chief Counsel, United States Customs and Border Protection, of New York, New York.

_____

Before WALLACH, MAYER, and CHEN, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Before the court is Dependable Packaging Solutions, Inc.'s ("Dependable") appeal regarding the classification of certain types of glass merchandise. For the reasons set forth below, the holding of the Court of International Trade ("CIT") is affirmed.

## BACKGROUND

Dependable imports and distributes packing, janitorial, floral, and office supplies, and certain glass items. On May 29, 2010, Dependable imported certain glass items from the People's Republic of China and identified them on their respective commercial invoices as "Generic Bud Vases" for the smaller ("bud vases") and "Generic Trumpet Vases" ("trumpet vases") for the larger (collectively, "the vases" or "the merchandise"). Both types of vases have an inexpensive look and visible seams. When imported, the bud vases were valued at $0.30 or less and the trumpet vases at more than $0.30 but no greater than $3.00.

After importing the vases, Dependable sells them to mass-market flower-packing houses that fill them with water and flowers. The packing houses then ship the flower-packed vases to supermarkets or similar retailers, where the vase and flower combinations are displayed and sold as a single unit. Similar vases are sold empty at retail. Dependable's vases are not sold empty at retail, though they can be reused.

When the vases were imported, Dependable classified them under the Harmonized Tariff Schedule of the United

States ("HTSUS")[1] 7018.90.50.[2]  At liquidation, U.S. Customs and Border Protection ("Customs") classified the bud vases under HTSUS 7013.99.404 and the trumpet vases under HTSUS 7013.99.50.5.  The vases were thus classified under heading 7013, which provides for "Glassware of a kind used for . . . indoor decoration . . . (other than that of heading 7010 or 7018)."  Specifically, heading 7013 provides, in relevant part:

> 7013    Glassware of a kind used for table, kitchen, toilet, office, *indoor decoration or similar purposes* (other than that of heading 7010 or 7018):
> Other glassware
> 7013.99          Other . . .
> 7013.99.40          Other:
>                         Valued not over $0.30
>                         each . . . 38%
> 7013.99.50                    Valued over $0.30 but not over
>                         $3 each . . . 30%

(emphasis added).

Dependable timely protested but Customs failed to act within thirty days, resulting in a deemed denial.  After the assessed duties were paid, Dependable filed this action in the CIT, abandoning its entered classification under heading 7018.90.50 and asserting both vases should be classified under HTSUS heading 7010, which

---

[1] All references to the HTSUS refer to the 2010 edition.

[2] HTSUS 7018.90.50 covers: "Glass beads, imitation pearls, imitation precious or semiprecious stones and similar glass small wares and articles thereof other than imitation jewelry; glass eyes other than prosthetic articles; statuettes and other ornaments of lamp-worked glass, other than imitation jewelry; glass microspheres not exceeding 1 mm in diameter: . . . Other: . . . Other."

includes "containers, of glass, of a kind used for the conveyance or packing of goods." In particular, heading 7010 states, in relevant part:

> 7010    Carboys, bottles, flasks, jars, pots, vials,
>             ampules and other containers, of glass, of
>             a kind used for the conveyance or packing
>             of goods; preserving jars of glass; stoppers,
>                 lids and other closures, of glass: . . .
> 7010.90          Other . . .
> 7010.90.30          Other . . . 5.2%.

Dependable contended its vases should be classified under HTSUS 7010.90.30.

After reviewing both competing headings and conducting a *Carborundum* analysis,[3] the CIT determined "a reasonable jury could only conclude that the vases here are commercially fungible with other inexpensive clear glass vases whose principal use is decorative, rather than with glass packing containers." *Dependable Packaging Solutions, Inc. v. United States*, No. 10-0330, 2013 WL 646328, at *9 (Ct. Int'l Trade Feb. 20, 2013). The CIT accordingly held Customs' classification was correct and granted summary judgment in favor of the Government. Dependable timely appeals. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (2012).

---

[3]    When, as here, the CIT performs a principal use analysis to determine the proper heading for the imported merchandise, the CIT analyzes several factors, commonly referred to as the "*Carborundum* factors," in order to determine which goods are "commercially fungible with the imported goods." *Aromont USA, Inc. v. United States*, 671 F.3d 1310, 1312–13 (Fed. Cir. 2012).

DISCUSSION

I. Standard of Review

This court reviews the CIT's grant of summary judgment on tariff classifications de novo. *Lemans Corp. v. United States*, 660 F.3d 1311, 1315 (Fed. Cir. 2011); *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006). In assessing Customs' classification determinations, this court employs the two-step analysis used by the CIT: (1) ascertaining "the proper meaning of the tariff provisions, which is a question of law reviewed de novo"; and (2) determining "whether merchandise falls within a particular heading, which is a question of fact we review only for clear error." *Lemans*, 660 F.3d at 1315 (citing *Cummins*, 454 F.3d at 1363). However, "[w]here . . . the nature of the merchandise is undisputed, the inquiry collapses into a question of law we review de novo." *Id.* "Here, there is no genuine dispute as to 'exactly what the merchandise is' or as to its actual use." *Dependable Packaging,* 2013 WL 646328, at *2 (citing *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998)). Although the parties disagreed as "to the 'principal use' of the vases," the CIT held this was "not a material dispute precluding summary judgment." *Id.*

II. Legal Framework

A. Classification Pursuant to the HTSUS

The HTSUS is composed of classification headings, each of which has one or more subheadings. *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1366 (Fed. Cir. 2013). "The headings contain 'general categories of merchandise,' whereas 'the subheadings provide a more particularized segregation of the goods within each category.'" *Id.* (quoting *Orlando Food Corp. v. United States,* 140 F.3d 1437, 1439 (Fed. Cir. 1998)). Along with the headings and subheadings, which are enumerated in chapters 1 through 99 of the HTSUS (each of which has

its own section and chapter notes), the HTSUS statute also contains the "General Notes," the "General Rules of Interpretation" ("GRI"), the "Additional United States Rules of Interpretation" ("ARI"), and various appendices for particular categories of goods. *See Baxter Healthcare Corp. of P.R. v. United States*, 182 F.3d 1333, 1337 (Fed. Cir. 1999) (citing 19 U.S.C. § 3004(a) (1994)). The classification of merchandise is governed by the GRIs and the ARIs, which are applied in numerical order. *BenQ Am. Corp. v. United States*, 646 F.3d 1371, 1376 (Fed. Cir. 2011). The World Customs Organization's "Explanatory Notes," which accompany each chapter of the HTSUS, are "not legally binding, are 'persuasive[,]' and are 'generally indicative' of the proper interpretation of the tariff provision." *Lemans*, 660 F.3d at 1316 (quoting *Drygel, Inc. v. United States,* 541 F.3d 1129, 1134 (Fed. Cir. 2008)).

The classification analysis always begins with GRI 1, which directs that "classification shall be determined according to the terms of the *headings* and any relative section or chapter notes." HTSUS GRI 1 (emphasis added); *see Orlando Food*, 140 F.3d at 1440 ("[A] court first construes the language of the heading, and any section or chapter notes in question, to determine whether the product at issue is classifiable under the heading."). "Absent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings, which are presumed to be the same." *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (citing *Simod Am. Corp. v. United States*, 872 F.2d 1572, 1576 (Fed. Cir. 1989)). Pursuant to GRI 1, the possible headings are to be evaluated without reference to their subheadings, which cannot be used to expand the scope of their respective headings. *Orlando Food*, 140 F.3d at 1440 ("Only after determining that a product is classifiable under the heading should the court look to the subheadings to find the correct classification for the merchandise. . . . [W]hen determining which heading is

. . . more appropriate for classification, a court should compare only the language of the headings and not the language of the subheadings."); *EOS of N. Am., Inc. v. United States*, 911 F. Supp. 2d 1311, 1327–28 (Ct. Int'l Trade 2013). Finally, if the proper heading can be determined under GRI 1, the court is not to look to the subsequent GRIs. *See CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011) (citing *Mita Copystar Am. v. United States,* 160 F.3d 710, 712 (Fed. Cir. 1998)) ("We apply GRI 1 as a substantive rule of interpretation, such that when an imported article is described in whole by a single classification heading or subheading, then that single classification applies, and the succeeding GRIs are inoperative.").

All the relevant HTSUS headings in this case are principal use provisions,[4] which are governed by ARI 1(a). "[A] tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use." ARI 1(a); *see also Primal Lite, Inc. v. United States*, 182 F.3d 1362, 1363 (Fed. Cir. 1999). This court has explained that the purpose of "principal use" provisions "is to classify particular merchandise according to the ordinary use of such merchandise, even though particular imported goods may be put to some atypical use." *Primal Lite, Inc.*, 182 F.3d at 1364. Thus, for example, "a classification covering vehicles principally used for automobile racing would cover a race car, even if the particular imported car was actually used solely in an advertising display." *Id.*

---

[4] The parties correctly agree that the competing headings, 7010 and 7013, are principal use provisions.

### B. The Competing Headings

The parties are in agreement that the vases should be classified under HTSUS chapter 70 ("Glass and glassware"), but disagree about the appropriate heading. Currently the subject merchandise is classified under heading 7013, which provides for "Glassware of a kind used for table, kitchen, toilet, office, indoor decoration or similar purposes (other than that of heading 7010 or 7018)." Dependable argues the vases should be classified under heading 7010, which includes "containers, of glass, of a kind used for the conveyance or packing of goods."

### III. The Scope of Heading 7013

The Explanatory Notes to HTSUS 7013 specifically identify "vases" as an example of "glassware for indoor decoration and other glassware covered by heading 7013." *See* Explanatory Notes to the Harmonized Commodity Description and Coding Sys., 70.13, 4th ed. (2007) ("Explanatory Notes") ("This heading covers . . . [g]lassware for indoor decoration and other glassware . . . such as vases."). The CIT concluded Dependable's vases were "vases" within the scope of 7013, in part by relying on dictionary definitions of the word "vase." *Dependable Packaging*, 2013 WL 646328, at *4–5 & n.12 ("'An open container, as of glass or porcelain, used for holding flowers or for ornamentation.'" (quoting American Heritage Dictionary of the English Language 1904 (4th ed. 2000))); "'[A] usually round vessel of greater depth than width used chiefly as an ornament or for holding flowers.'" (Merriam-Webster's Online Dictionary, Vase, http://www.merriam-webster.com/dictionary/vase (last visited June 13, 2014))).

Dependable argues "it was an error to rely on a definition of 'vase' since the term vase does not appear" in Dependable's proposed heading 7010. Appellant's Br. 9. Dependable contends the CIT instead "should have concentrated on the definition of container, which does ap-

pear in heading 7010." *Id.* Appellees counter the CIT correctly determined "the products at issue are glass flower 'vases' despite Dependable's avoidance of that term." Appellee's Br. 14 (citing *Dependable Packaging,* 2013 WL 646328, at *5).

Dependable's argument is without merit. The CIT properly relied upon the Explanatory Notes in determining the scope of heading 7013. The Explanatory Notes "do not constitute controlling legislative history but nonetheless are intended to clarify the scope of . . . and to offer guidance in interpreting" the HTSUS. *Mita Copystar Am.*, 21 F.3d at 1082 (citation omitted). The Explanatory Notes are "'generally indicative of the proper interpretation of the [HTSUS].'" *Lynteq, Inc. v. United States*, 976 F.2d 693, 699 (Fed. Cir. 1992) (quoting H.R. Rep. No. 100-576 (1988), *reprinted in* 1988 U.S.C.C.A.N 1547, 1582). Dependable is therefore incorrect that the term "vase" is irrelevant to the proper interpretation of the headings.

Additionally, Dependable itself identifies the merchandise as either "Generic Bud Vase" or "Generic Trumpet Vase" on its commercial invoices, *see Dependable Packaging*, 2013 WL 646328, at *1; its sales brochures, J.A. 150–159; and in its responses to Customs' interrogatories, J.A. 194. Dependable never denies the merchandise is vases, *see* J.A. 47, and indeed, during oral argument agrees it is. *See* Oral Argument at 4:21–4:25, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/13-1300/all (counsel replying "yes" when asked whether the subject merchandise is "sold by the stores, as being in vases"). Finally, Dependable conceded the merchandise is vases: "Q[uestion:] When you say glass containers, are you referring to vases, like the vases that are at issue in this case? A[nswer]: Yes." J.A. 47. Accordingly, we find no error in the CIT's focus on "vase," and therefore turn to determining the principal use of the merchandise at issue.

IV. The Principal Use of the Merchandise

Principal use provisions "'call for a determination as to the group of goods that are commercially fungible with the imported goods'" in order to identify the "use 'which exceeds any other *single* use.'" *Aromont USA, Inc. v. United States,* 671 F.3d 1310, 1312 (Fed. Cir. 2012) (quoting *Primal Lite*, 182 F.3d at 1365; *Lenox Collections v. United States,* 20 C.I.T. 194, 196 (1996)). The CIT analyzes the "*Carborundum* factors" in determining which goods are "commercially fungible with the imported goods." *Id.* at 1312–13. The factors include:

> [The] use in the same manner as merchandise which defines the class; the general physical characteristics of the merchandise; the economic practicality of so using the import; the expectation of the ultimate purchasers; the channels of trade in which the merchandise moves; the environment of the sale, such as accompanying accessories and the manner in which the merchandise is advertised and displayed; and the recognition in the trade of this use.

*Id.* (citing *United States v. Carborundum Co.*, 536 F.2d 373, 377 (CCPA 1976)).

The CIT found the "[a]pplication of the *Carborundum* Factors demonstrates that Dependable's vases are commercially fungible with other clear glass vases that are primarily used for decorative purposes," thus falling under heading 7013. *Dependable Packaging,* 2013 WL 646328, at *5. Dependable disputes that determination here.

A. General Physical Characteristics

The CIT found this factor "shows that the vases are commercially fungible with other clear glass vases that are sold empty at retail and are used for decorative purposes." *Id.*

The general physical characteristics of the merchandise are not disputed by either party. Examining the merchandise, the CIT found:

The bud vases are eight inches in height, with a quarter-inch lip that the parties agree is not designed for any sort of closure. The lip surrounds an opening measuring one and one-half inches in diameter. The bud vases have a narrow neck extending downward five inches from the opening. The neck then widens into a bulbous shape, two and three-quarters inches in diameter at its widest point, and ends in a slightly concave bottom two inches in diameter. The bud vases also have deepening striations beginning one inch below the lip that continue to the bottom of the article.

The trumpet vases are nine and three-quarter inches in height with a quarter-inch lip that the parties agree is not designed for any sort of closure. The lip surrounds an opening measuring three and three-quarter inches in diameter. The diameter of the opening gradually narrows (as one moves two-thirds of the way down the vase) to a diameter of three inches, widening again thereafter to end in a bottom measuring four and one-quarter inches in diameter.

*Id.* at *1 (footnote omitted). The vases' physical characteristics are indistinguishable from other glass vases sold at retail for the purpose of decoration. *See* J.A. 218, 220–22 (testimony of a Customs Senior Import Specialist about her visits to various retail stores that sold similar vases for decorative purposes), 239–46 (exhibit documenting various retail stores selling similar vases for decorative purposes).

Additionally, "[t]he design features of the vases that Dependable points to as indicating use as [] packing material (narrow waists, long necks, small openings,

inexpensive glass) are apparent in . . . other, virtually identical vases," which indicates Dependable's merchandise is "commercially fungible" with other inexpensive vases that are sold empty at retail and used for decorative purposes. *Dependable Packaging*, 2013 WL 646328, at \*5.

Finally, Dependable's vases do not include closures and thus are not well-suited for "conveyance or packing," as required by Dependable's proposed heading. Subheading 7010.90.30 provides for:

> Carboys, bottles, flasks, jars, pots, vials, ampoules and other containers of glass, of a kind used for the conveyance or packing of goods; preserving jars of glass; stopper, *lids and other closures of glass*: . . . Other: . . . Other.

HTSUS 7010.90.30 (emphasis added). The products listed in this heading typically have closures. The Explanatory Notes to heading 7010 further support this proposition: "The above-mentioned containers are generally designed for some type of closure"; "They generally have a large opening, a short neck (if any), and as a rule, a lip or flange to hold the lid or cap"; and the covered containers also include "[a]mpoules . . . intended to serve, after sealing." *See also Latitudes Int'l Fragrance, Inc. v. United States*, 931 F. Supp. 2d 1247, 1254 (Ct. Int'l Trade 2013) ("The capacity of the bottles to take a stopper is a physical characteristic that distinguishes glassware for the conveyance of goods under heading 7010 from decorative glassware under heading 7013."). Accordingly, that Dependable's vases do not have a closure is indicative that they do not have the physical characteristics of merchandise that would fall under heading 7010.

Because Dependable's vases are fungible with other decorative glassware that falls under heading 7013, the general physical characteristics favor classifying the vases under heading 7013.

## B. Actual Use

The CIT determined the "use in the same manner which defines the class," or actual use, favored classifying Dependable's merchandise as glass vases primarily used for decorative purposes. "[A]ctual use of the particular imported goods is evidence of the principal use of the merchandise involved. Actual use of the goods involved is but one of a number of factors, and perhaps one of the more important of the *Carborundum* factors." *Aromont*, 671 F.3d at 1313. Dependable contends the actual use of the merchandise is use for "wet packing and conveyance of flowers" from the packing house to retailers. Appellant's Br. 14.

The CIT correctly concluded that the actual use of the merchandise is primarily decorative. It is undisputed that the merchandise is filled with flowers when sold to the end purchaser, and the unit is sold for a price higher than either the flowers or the vase individually. Additionally, purchasers of the unit at retail are able to display flowers in the vases and then reuse the vases in order to display flowers bought later in time. Indeed, Dependable concedes that consumers "do[] not want to go to the trouble of buying vases and flowers separately, but want[] the ease of having the glass containers and flowers as a unit ready to be *displayed at home or in the office.*" *Id.* at 19 (emphasis added).

Dependable's vases are not "sold empty at retail, indicating that they have some use as packing materials." *Dependable Packaging*, 2013 WL 646328, at *7. However, the ultimate use of the merchandise, consistent with the way in which other inexpensive glass vases are used, evidences a primarily decorative purpose. Additionally, that the vases can be used for conveyance does not negate the fact that they are also used primarily as decoration. Accordingly, the actual use of the merchandise is primari-

ly decorative, which favors classification under heading 7013.

### C. Economic Practicality

The CIT found there was "no admissible evidence on the record that the vases' use as packing containers is economically practical."[5]  *Dependable Packaging*, 2013 WL 646328, at \*7.  According to Dependable, however, this factor is "decisive" in finding the vases are classifiable under 7010 rather than 7013 because "Dependable's glass containers are the most economically feasible way to ship flowers from a packing house to supermarkets." Appellant's Br. 21 (citing J.A. 123).  Dependable asserts that because Dependable conveys and packs the flowers before arrival at the retailers, supermarkets do not need to hire florists.

Dependable fails to offer any evidence for this statement, and indeed, when asked during oral argument about its statement in its briefing that "most supermarkets do not have florist[s] on their premises that can care for flowers," Appellant's Br. 21–22, counsel conceded "I perhaps did misp[ea]k."  Oral Argument at 15:26–16:20. Without evidence on the record that supports Dependable, this factor favors classifying the merchandise under heading 7013.

### D. Expectations of the Ultimate Purchasers

Dependable argues the ultimate consumers of Dependable's merchandise purchase the vases "not for the

---

[5]    "[U]nder 28 U.S.C. § 2639(a)(1), a classification of merchandise by Customs is presumed to be correct . . . [so] the burden of proof is upon the party challenging the classification."  *Rollerblade, Inc. v. United States,* 282 F.3d 1349, 1352 (Fed. Cir. 2002) (internal quotation marks and citations omitted).

purpose of acquiring a decorative vase but for the conveyance of transporting flowers in a container." Appellant's Br. 17.

The record indicates that, at retail, the unit of the vase and flowers sells for more than the cost of flowers or vase alone. Retail purchasers pay extra for the pairing of flowers and vase when compared to the cost of flowers alone. *See* J.A. 85 ("Q[uestion:] You take the exact same bouquet of roses, you buy it out of the bucket without a vase, it's less expensive than the bouquet in the vase[?] A[nswer:] Yes. It's less cost for transport and product obviously."); *see also* Oral Argument at 4:39–5:03 (counsel replying "yes" to both whether customers pay more for the vase and flower combination and whether retailers charge more for that combination). That the unit price is more expensive than flowers alone indicates that acquiring Dependable's vases is not merely incidental to the purchase of the flowers, as would be the case if the vases were merely packing containers.

Dependable also argues that a purchaser "would not expect to reuse the glass containers for decoration after transporting the flowers to their intended location." Appellant's Br. 17. However, Dependable has provided no support for this assertion. *See Dependable Packaging*, 2013 WL 646328, at *6. It is also not disputed "that the vases are capable of reuse and that the ultimate purchaser would have the option to do so." *Id.*; *see also* J.A. 79. The CIT correctly determined that the ultimate purchaser buys the vases for primarily decorative purposes, not to perform conveyance or packaging.

## E. Channels of Trade

Dependable argues that because its vases "are never sold for any purpose other than that of being used as a container for conveying or packing of flowers" this factor supports classification under 7010. Appellant's Br. 19. However, Dependable's sale of the empty vases to packing

houses does not mean they are fungible with glass containers intended to be used for packaging or conveyance. The ultimate purchaser buys the vase at retail for the purpose of decoration, as determined above. Thus, we agree with the CIT's analysis that "the movement of the vases in trade merely suggests that Dependable's vases travel in an atypical manner to the final purchasers who employ them in a typical manner." *Dependable Packaging*, 2013 WL 646328, at *6.

### F. Environment of the Sale

The manner in which a product is displayed and advertised is relevant to an analysis of this factor. *See Carborundum*, 536 F.2d at 377. It is undisputed that the vases are filled with flowers and displayed for sale at the retail location in order to encourage customers to purchase the vase and flower unit because of the decorative value of the vase and flowers combined. Indeed, Dependable's own marketing materials depict some of its vase and flower units being used as decoration and state "retailers hope that consumers would be attracted to the presentation of the flowers within glass containers." *See* J.A. 160, 161, 164; Appellant's Br. 20.

### G. Recognition in the Trade of This Use

Under this factor, "courts consider whether the merchandise is recognized in the trade as having that particular use or whether it meets certain specifications recognized in the trade for that particular class of products." *Aromont*, 671 F.3d at 1316. Dependable contends the trade recognizes its merchandise as "utility vases," which reflects "the durability of the glass containers" and their ability to protect the flowers during transport. Appellant's Br. 23. However, the only record evidence related to this factor is Dependable's testimony about the use of its actual customers, "rather than connoting any broad commercial meaning or industry practice." *Dependable Packaging*, 2013 WL 646328, at *8 (citing J.A.

76–77) ("Q[uestion:] Is that a term of art, utility vase? A[nswer:] Of art, no. Q[uestion:] Is it something used in the industry, that term 'utility vase'? A[nswer:] They usually use utility vase as cheap."). As discussed above, the record shows that vases that are "virtually indistinguishable" from Dependable's glass vases are sold empty at retail for the purpose of decoration. *Id.* The record thus shows that this factor is neutral.

In sum, nearly every *Carborundum* factor weighs heavily in favor of classifying Dependable's merchandise under heading 7013 rather than heading 7010, and not one supports Dependable. Accordingly, the CIT correctly granted summary judgment upholding Customs' classification of the vases under heading 7013.

CONCLUSION

The decision of the CIT is

**AFFIRMED**